## Webster Mfg. Co. v. Adam Nisbett.

1. EVIDENCE—*Province of Jury Where it is Conflicting.*—Where the evidence is conflicting, it is the province of the jury to decide on which side the greater weight of credible evidence is.

2. MASTER AND SERVANT—*Servant May Assume that Appliances Furnished are Sufficient for Their Purpose.*—As a general rule the servant has the right to presume that the materials and appliances

which are furnished to him in the performance of his duty are sufficient therefor; but where the servant has equal knowledge with the master, and a full knowledge of all existing defects, and more especially in the performance of ordinary labor in which no intricate machinery is involved, the rule is not applicable.

3. SAME—*Servant May Remain in Employ of Master for a Reasonable Time Awaiting Remedy of Defects.*—The servant may remain in the employ of the master for a reasonable time awaiting the remedy of defects in machinery, of which he has notified his master.

4. SAME—*Where Danger of Continuing Use of Tool is Imminent.*— Where the danger of continuing the use of the tool or appliance is so imminent that an ordinarily prudent and careful person would not continue to use it, the servant continues the employment at his own risk.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed December 22, 1902.

O. W. DYNES, attorney for appellant.

FRANCIS T. MURPHY, attorney for appellee; EDWARD C. HIGGINS, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee and against appellant for the sum of $6,000, rendered in an action on the case. The appellant is engaged in the city of Chicago in the manufacture of gas engines, etc., and some time prior to September 23, 1897, employed appellee as a blacksmith. In the afternoon of September 23, 1897, appellee was engaged in forging a piece of iron required to be in the shape of a T. One Neunschwander was his helper in doing the work. The work was done with two tools called, respectively, a set hammer and a backing hammer. The set hammer was used by appellee. He placed it against the iron which he was engaged in forging at such places as he wished blows to be struck, holding it there, and his helper then struck with the backing hammer on the set hammer so held by appellee. On the afternoon of September 23, 1897, while the work was proceeding as described, the helper struck a blow with the backing hammer on the

set hammer held in place by appellee, and a small particle of iron flew up and struck appellee in the left eye, destroying the eye.

There are numerous counts in the declaration, but the complaint stated in the declaration on which the right of recovery is based is, in substance, that the defendant, appellant here, furnished the helper of the plaintiff, appellee here, with an old, insufficient and dangerous backing hammer, with which to perform the duties assigned to such helper, of which condition of the backing hammer the defendant was notified and promised to repair the said hammer or furnish a suitable one in lieu thereof, and so induced the plaintiff to continue in the performance of the work with the said helper, etc., alleging the accident.

The jury, in addition to their general verdict finding the defendant guilty and assessing damages, found, in answer to special interrogatories, that the piece of metal which struck the plaintiff's eye came from the backing hammer.

The contentions of appellant's counsel are that the general and special verdicts are contrary to the evidence; that the injury arose from a risk assumed by appellee; that a promise to repair has no application to a simple tool like the backing hammer in question; that the injury was the result of an unavoidable accident; that appellee did not exercise ordinary care for his own safety, and that the court erred in ruling on evidence, and in instructing the jury. The evidence is voluminous, as it usually is in the class of cases to which this belongs, and can not be referred to in detail in an opinion of reasonable length. The evidence for appellee tends to prove the following facts: That the backing hammer used by the helper was old, chipped, in bad condition, and such that, in striking with it on the set hammer, particles were apt to fly from it; that two days before the accident appellee's helper, in appellee's presence, showed the hammer to appellant's foreman, and that the foreman looked at it and said he would get it fixed; that, in the forenoon of the day on which the accident occurred, and before it occurred, appellee took the backing hammer

to the foreman, asked him for the privilege of dressing it and making it right, and that the foreman looked at the hammer and said it was good enough; but appellee said no, that it had been chipping off, and might chip again, and that it was not exactly safe to work with, and the foreman then said: "Well, go ahead and use it now, and I will fix it, or get some one to fix it soon. Don't stop that job; I am in a hurry;" that the particle of iron which destroyed appellee's eye was a chip which flew from the backing hammer when the helper struck a blow with it on the set hammer. Dr. Edward M. Brown, who attended appellee after the accident, testified that he found in his eye a piece of steel about a quarter or five-sixteenths of an inch square and about as thick as a dime. Appellee's evidence also tended to prove that appellee could not repair the backing hammer without permission from the foreman.

Ole Paulsen, appellant's foreman, testified that the backing hammer was not shown to him, and that he made no promise to repair it. The testimony of other witnesses for appellant was contradictory of appellee's witnesses on material matters, but in this conflict of the evidence it was the province of the jury to decide on which side the greater weight of credible evidence was; and we are of opinion that the jury was warranted by the evidence in finding for appellee. Appellant put in evidence a backing hammer and a set hammer, the latter in apparently very bad condition, and claimed that the particle which destroyed appellee's eye flew from the set hammer in evidence; but the evidence tends strongly to prove that the set hammer in evidence is not the one used by appellee at the time of the accident.

The theory of appellant's counsel, on which the contention is based that appellee assumed the risk of injury from flying particles of iron, when doing his work, is, that such particles will fly under the most favorable conditions; but the preponderance of the evidence is that they are much more likely to fly from an old tool which has become chipped and in bad condition from use. Some of appellant's wit-

nesses admitted this on cross-examination. We can not sustain the contention that appellee assumed the risk of the use of tools in bad condition, and the fact that he went to the foreman and complained of the condition of the backing hammer, and was only induced to continue using it by the foreman's promise to have it repaired, is against appellant's contention. The contention could only be sustained on one of two hypotheses—either that all tools furnished by appellant to its employes were in bad condition, and that appellee knew this when employed, or that the tool in question was in bad condition, of which appellee had knowledge, notwithstanding which he continued to use it, without complaint, and without any promise of his employer to repair it. Appellee, at the time of the accident, was, as appears from the evidence, performing his allotted work in the usual way, and the objection that he did not exercise ordinary care for his personal safety finds no support in the evidence.

Decisions of the courts of other states are cited by appellant's counsel, in support of the proposition that a promise to repair is inapplicable, so as to create liability, to a simple tool such as a hammer. No such doctrine has been announced in this state. On the contrary, the Supreme Court, in Illinois Steel Co. v. Mann, 170 Ill. 200, 207, plainly intimates, as we think, that the doctrine contended for is not the law in this state, saying :

" As a general rule courts will consider that the master who employs a servant has a better and more comprehensive knowledge of the machinery and materials to be used than the employe. The servant has the right to presume that the materials and appliances which are furnished to him in the performance of his duty are sufficient therefor. This rule, however, is not applicable to all cases, and where the servant has equal knowledge with the master and a full knowledge of all existing defects, and more especially in the performance of ordinary labor in which no intricate machinery is involved, the rule is not applicable. In Marsh v. Chickering, 101 N. Y. 400, this exception is recognized, and it is said that the facts that a laborer using ordinary tools and appliances notified the master of a defect of

which the servant himself had full knowledge, and asked it to be remedied, and the master promised so to do, do not render the master responsible. The rule in this state is more liberal, however, and permits the servant to remain in the employ of the master for a reasonable time awaiting the remedy of such defects."

We do not feel warranted in treating the question as an open one in this state.

The rule, in case of a promise to repair, is, that unless the danger of continuing the use of the tool or appliance is so imminent that an ordinary prudent and careful person would not continue to use it, the employe may continue its use for a reasonable time to allow performance of the promise. Drop Forge & Foundry Co. v. Van Dam, 149 Ill. 337.

In Missouri Furnace Co. v. Abend, 107 Ill. 44, 52, the court state the reason of the rule thus :

"The reason upon which the rule is said to rest is, that the promise of the master to repair defects relieves the servant from the charge of negligence by continuing in the service after the discovery of the perils to which he would be exposed."

In Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573, 582, the court go still further, saying :

"When the master has knowledge of the defects and promises to repair the same, he impliedly requests the servant to continue to work, and that he, the master, will take upon himself the responsibility of any accident that may occur during that period."

The words "that period," in the above quotation, refer to a reasonable time for the performance of the master's promise. The contention that appellee's injury was the result of a mere accident, can not be sustained.

Appellant's instruction 4 was properly refused. Instruction 9, asked by appellant, is substantially covered by appellant's instruction 2, given. We find no reversible error in the refusal or modification of any instruction asked by appellant. The court gave numerous instructions for appellant, which, taken together, fairly embody the law applicable to the facts in evidence. Neither do we

find any reversible error in the court's ruling on evidence. Appellee lost his left eye by an accident; he was unable to work for nearly a year, and suffered a great deal of pain, and we can not say that the damages awarded by the jury were excessive.

The judgment will be affirmed.