## MULLINS v. MANHATTAN BRASS CO.

### (Supreme Court, Appellate Term.   April 24, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE MACHINE—NEGLIGENCE—QUESTION FOR JURY.

In an action by a servant for injuries alleged to have been caused by failure to furnish a suitable and safe machine, evidence *held* to show defendant guilty of no negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Where the machine at which plaintiff worked was not defective, but some of the material was, and in order to use it plaintiff adopted voluntarily a new method of work, the risk of which was obvious, he assumed the risk.

3. SAME—ASSUMPTION OF RISK.

Where there was no defect in the machine at which plaintiff had worked for years, and the power was absolutely in his control, and on the day of the injury sued for plaintiff adopted a new method of work, by which his hand was endangered when the machine was in operation, whereby he was injured, he was guilty of contributory negligence.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by John Mullins against the Manhattan Brass Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before SCOTT, P. J., and LEVENTRITT and GREEN-BAUM, JJ.

E. Clyde Sherwood, for appellant.
Dee & Donovan (Michael F. Dee, of counsel), for respondent. *

LEVENTRITT, J. This is an action to recover damages for personal injuries. The material facts are substantially undisputed. At the time of the accident the plaintiff was in the employ of the defendant as a brass worker and tool setter, and had been so employed for many years. On the occasion in question he was operating a lathe used for turning and trimming what are termed "car-heating shells." He was fully conversant with the method of operating, having done similar work on similar machines for more than 15 years. The turning operation is described as follows: The shell, which is a circular piece of brass, resembling a saucer in shape, was ordinarily grasped in the right hand, the thumb and first finger running around the edges of the shell, leaving both the concave and convex faces uncovered. So held, the shell was placed with its concave face against a revolving head of the lathe. Some inches away from this head was a second one, fitted with a hollow chuck of template, which was brought in contact with the other head, or the intervening shell, solely by the force of foot pressure exerted on a lever or treadle underneath the table on which the machine rested. When the shell was firmly held by the two heads, a second lever, connected with the bench of the machine and resting on the table, was raised, and, by the revolution of a small wheel coming in contact with the edge of the shell, rolled it into the desired shape. Up to the day before the accident the plaintiff, in placing the shells, had always held them in the lathe by running his thumb and forefinger around the edge, but on that day he noticed that a number of the shells were "pinched and ragged," and so reported to the superintendent, who said to him: "Well, you let them go through, Mullins; do the best you can with them; try and get them out the best you can." The plaintiff replied that he "would try to do them another way," and went back to work. Only a small proportion of the shells were ragged; about 125 out of a total of 1,700 turned the day before the accident. The plaintiff, however, adopted a different method for placing all the shells. This consisted in avoiding the edge entirely, and holding the shell with the thumb and first finger running down the concave and convex surfaces respectively, removing the finger as he set the shell against the stationary head, and removing the thumb just as the other head came against the shell. Having so operated for several hours on the day of the accident, the plaintiff failed to withdraw his thumb in time to avoid the rear head, with the result that it was caught and cut off at the middle joint.

I fail to find any evidence of negligence on the part of the defendant, and I think there was contributory negligence as a matter of law on the part of the plaintiff. There was a variance between pleading and proof, the complaint alleging merely failure

to provide a suitable and safe machine. But the evidence as to the defective material was admitted without objection, and the motion to strike out was not timely, so that the question of negligence is to be considered on the entire record. It does not appear, however, that any of the ragged shells caused or contributed to the injury. Only a small quantity of the shells handled were defective, and the plaintiff admitted that he did not examine each one as he placed it in the lathe, but that he adopted the new method for all so as not to take any chances.

Again, it is quite evident that the plaintiff assumed any risk that attended the changed manner of placing the shells. The record will not support the contention that the plaintiff was ordered to adopt the new method. It was voluntary on his part. There was no defect in the machine. The plaintiff was skilled in its operation, and fully acquainted with its behavior. Any risk that he took in placing the shells was an obvious one. The danger to be avoided was one arising from the manner of using the material and his hands. This branch of the case seems to fall strictly within that class of cases of which Spencer v. Worthington, 44 App. Div. 496, 60 N. Y. Supp. 873, and Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56, are especially applicable.

On the other branch of the case, it is quite clear that the plaintiff was not free from contributory negligence. The power that brought up the second head against the shell was absolutely in the control of the plaintiff. When his foot was off the treadle, the head was stationary and could not move. He testified several times, and unequivocally, that the heads were brought together by the power applied to the treadle. "Q. And if you had not put your foot on the lever, these clutches (heads) would not have come together, of course? A. Certainly not." A patent expert called by the defendant also testified that it was "utterly impossible" to bring the heads or clutches together unless the operator placed his foot on the treadle. It is therefore apparent that with no defect in the machine, with its mechanism and operation entirely familiar to the plaintiff over a long course of years, and the power absolutely in his own control, the injury was occasioned by his own act, and is not to be charged to the defendant. The judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.