CARRIE E. DRAKE, as Administratrix of DELBERT M. DRAKE, Deceased, Respondent, *v.* AUBURN CITY RAILWAY COMPANY, Appellant.

1. MASTER AND SERVANT — ASSUMPTION OF OBVIOUS RISK. The rule of the assumption of obvious risks does not rest wholly upon an implied agreement of the employee, but on an independent act of waiver evidenced by his continuing in the employment with a full knowledge of all the facts.

2. NEGLIGENCE. Where it appears upon the trial of an action for negligence that plaintiff's intestate, who was performing his duties as a conductor upon defendant's railroad, was killed by coming in contact with a tree near the track, that he had been over the road about one hundred and sixty times as a conductor and about forty or fifty trips as a motorman, and consequently was familiar with the situation, the submission to the jury of the question whether it was negligence upon the part of defend-

ant to maintain its road so near the line of the tree as would cause the injury complained of is reversible error, since by continuing in his employment with full knowledge of all the facts he must be deemed to have assumed an obvious risk.

*Drake* v. *Auburn City Ry. Co.,* 70 App. Div. 622, reversed.

(Argued January 19, 1903; decided February 10, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 17, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Nottingham* for appellant.    Whatever risk arose from the situation of the railroad relative to this line of trees was open and obvious and was assumed by the plaintiff's intestate when he entered the service.    He could not call upon the defendant to change the location of its tracks, especially since long before the accident he became entirely familiar with the situation.    (*Gibson* v. *E. R. Co.,* 63 N. Y. 449; *De Forest* v. *Jewett,* 88 N. Y. 264; *Sweeney* v. *B. & J. E. Co.,* 101 N. Y. 520; *Hickey* v. *Taaffe,* 105 N. Y. 26; *Williams* v. *D., L. & W. R. R. Co.,* 116 N. Y. 628; *Powers* v. *N. Y., L. E. & W. R. R. Co.,* 98 N. Y. 274; *Appel* v. *B., N. Y. & P. Ry. Co.,* 111 N. Y. 550; *Kennedy* v. *M. R. Co.,* 145 N. Y. 288.)    Under the rulings and charge of the trial court the verdict may have been based, as far as the defendant's negligence is concerned, solely upon the ground that the defendant's tracks were located too near this line of trees and the latter held, therefore, liable, notwithstanding the conductor's knowledge of the situation.    (*Buckley* v. *G. P. & R. Mfg. Co.,* 113 N. Y. 540; *Marsh* v. *Chickering,* 101 N. Y. 396; *Crown* v. *Orr,* 140 N. Y. 450; *Spencer* v. *Worthington,* 44 App. Div. 496; *Miller* v. *Grieme,* 53 App. Div. 276; *Savage* v. *N. E. R. R. Co.,* 42 App. Div. 241.)    The plaintiff's intestate was clearly guilty of contributory

negligence.    Upon the side of the car next the highway the
conductor could have discharged his duties with perfect safety.
Moreover, the car had been specially equipped so as to enable
and induce him to take that position.    But he chose the
unsafe place instead, and deliberately incurred the risk of
going upon the side next the trees to collect the fares.    The
chance thus unnecessarily taken was his own and the penalty
cannot be visited upon the defendant. (*Reiser* v. *N. Y. &
H. R. R. Co.*, 24 App. Div. 23 ; *Gibson* v. *E. R. Co.*, 63 N.
Y. 449, 454 ; *Moylan* v. *S. A. R. R. Co.*, 128 N. Y. 583 ;
*Coleman* v. *S. A. R. R. Co.*, 114 N. Y. 609 ; *Craighead* v.
*B. C. R. R. Co.*, 123 N. Y. 391 ; *Murphy* v. *N. A. R. R.
Co.*, 6 Misc. Rep. 298 ; *McDugan* v. *N. Y. C. & H. R. R. R.
Co.*, 10 Misc. Rep. 336 ; *Crowley* v. *M. St. R. R. Co.*, 24 App.
Div. 101 ; *Caspers* v. *D. D., etc., R. Co.*, 22 App. Div. 156,
160 ; *Haven* v. *Bridge Co.*, 151 Penn. St. 620 ; *Taylor* v.
*Railroad*, 109 N. C. 236.)    There is an entire absence of
proof that the deceased exercised any care to avoid coming in
contact with the trees.    In fact it appears that he was walk-
ing along the running board toward the rear of the car with
his back to them when he was struck.    Under such circum-
stances there can be no recovery. (*Wiwirowski* v. *L. S. &
M. S. R. R. Co.*, 124 N. Y. 420 ; *Weston* v. *City of Troy*,
139 N. Y. 281 ; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*,
58 N. Y. 248 ; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75
N. Y. 330 ; *Bond* v. *Smith*, 113 N. Y. 378.)

*Danforth R. Lewis* for respondent.    The defendant's right
to lay its tracks and operate its cars thereon carries with it
the obligation to lay them in proper manner and keep them
in repair, and for the safety of its employees it is bound to use
suitable care and skill in furnishing a safe and proper track
and roadbed and exercise care in keeping it in repair.    It was
negligence for the defendant to allow and continue its roadbed
and track to remain in the condition in which it was found to
be at the place of this accident, and continue to operate its
cars thereon when it would necessarily endanger the lives of

the employees when engaged in the discharge of their duties. (*Donnegan* v. *Erhardt*, 119 N. Y. 468; *Worster* v. *F. S. St. R. R. Co.*, 50 N. Y. 203; *Caughlin* v. *B. H. R. R. Co.*, 59 App. Div. 126; *True* v. *L. V. R. R. Co.*, 22 App. Div. 588.) It was negligence for the defendant to run its open cars upon the track at the place of the accident. (*Benthin* v. *N. Y. C. & H. R. R. R. Co.*, 24 App. Div. 303; *Brown* v. *N. Y. C. & H. R. R. R. Co.*, 42 App. Div. 548; *Fitzgerald* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 359.) Plaintiff's intestate did not assume the risk of injury, nor was he guilty of any negligence which contributed to the injury. (*Wallace* v. *N. Y. C. & H. R. R. R. Co.*, 138 N. Y. 302; *Benthin* v. *N. Y. C. & H. R. R. R. Co.*, 24 App. Div. 303; *Brown* v. *N. Y. C. & H. R. R. R. Co.*, 42 App. Div. 548; *Boyle* v. *D. McL. C. Co.*, 47 App. Div. 311; *Fitzgerald* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 359; *Ferrin* v. *O. C. R. R. Co.*, 143 Mass. 197; *I. C. R. R. Co.* v. *Walsh*, 52 Ill. 183; *N. Y. C. & St. L. R. R. Co.* v. *Ostman*, 41 N. E. Rep. 1037; *Johnston* v. *O. S. L. Ry. Co.*, 23 Oreg. 94; *Johnson* v. *S. P. M. Ry. Co.*, 43 Minn. 53.)

BARTLETT, J. On the fourth day of July, 1899, the intestate, a conductor on one of the cars of the defendant, was killed, and this action is brought by his widow, the administratrix, to recover damages.

The defendant's railroad runs southerly from the city of Auburn to Owasco lake. The northerly portion of the road is within the city limits and the remainder, for a distance of some two miles, is in the town of Owasco, running along Owasco street to a park upon the shore of the lake.

On the westerly side of Owasco street is a row of large trees for almost the entire distance from the city line to the lake.

The commissioner of highways of the town of Owasco issued a permit for the construction of this portion of the road, in which it was provided that it should be " constructed and laid upon the westerly side of said highway so that the

easterly rail of said track shall be within eight feet from the line of trees standing and growing upon the west side of said highway."

The evidence establishes that under this mode of construction the nearest point of the car to the trees was about twenty-one inches.

At the time of the accident the intestate was conducting what is known as an "open car" (this being a trolley line), with a running board upon each side, from which the conductor collected fares and discharged his general duties in the premises.

The car was running south towards the lake, and at the time of the accident the intestate was standing upon the running board on the westerly or right-hand side of the car, nearest the trees.

The evidence shows that the travel on this holiday was heavy, and at the time of the accident, between two and three o'clock in the afternoon, it was raining slightly.

The intestate had collected the fares and was engaged in adjusting a curtain, at the request of a passenger, when in some manner his head came in contact with a tree, resulting in a fracture of the skull, causing death.

There was a sharp conflict of evidence as to the condition of the track at the point where the accident occurred. The plaintiff's evidence tended to show that at this point there was a slight curve of one degree, and that the inner rail which was nearest the trees should have been depressed about one inch in order to overcome it; that, as matter of fact, this rail was depressed about four and three-quarters inches.

This condition was due, according to plaintiff's witnesses, to the dangerous and decayed condition of the ties, which were covered with dirt and sod; the fish plate that held the rails together at the joint was broken, one of the bolts gone and several spikes drawn from the ties.

If the jury believed this evidence they were justified in finding that the effect of this condition of the track was to cause the car to lean over, more or less, toward the line of trees.

There was also evidence tending to establish the fact that the tree, against which the intestate's head struck, leaned somewhat toward the track, and at the point of contact was some twelve inches nearer the track than at its base.

The defendant not only contradicted to some extent this evidence in relation to the condition of the track, but gave proof tending to show, as is contended, contributory negligence on the part of the intestate, by reason of the fact that the open cars had been provided with a signal bell cord and register rope on each side so as to enable conductors, under instructions, to avoid as much as possible the use of the running board nearest the trees.

The plaintiff in reply gave evidence to the effect that the usual way for passengers, in entering and leaving the car when traveling south in the town of Owasco, was on the westerly side; that it was a part of the conductor's duty, under the rules, to assist women and children on and off the car; and that it was quite impossible for the intestate, under the conditions existing at the time of the accident, to wholly operate his car from the easterly running board.

In this state of the record there were two questions for the consideration of the jury, on conflicting evidence, to wit, as to the condition of the track and the contributory negligence of the intestate.

It is urged by the counsel for the defendant that the trial judge erred in his charge to the jury in submitting for their consideration an additional question as to the general liability of the defendant by reason of operating its road so near the line of trees in question.

The charge bearing upon this point is as follows: " It will be for you to say whether as a fact negligence is attributable because of the condition of things. Negligence is a question of fact for the jury, and it will be necessary for you to pass upon that question. If the track was maintained so near the tree that conductors in the performance of their ordinary duties, while performing them carefully and with due regard for their own safety, were likely to receive such an injury as

this, then it is a fact upon which you may predicate negligence on the part of the defendant. If you find it to be dangerous — if you find the track to be so near the tree as alleged and likely to cause such an injury, you will be justified in saying that the defendant was negligent in maintaining its road in the position so near that object."

The trial judge then charged the jury as to the defendant's negligence growing out of the condition of the track, concerning which there is no objection.

It was clearly error to submit to the jury the question whether it was negligence on the part of the defendant to maintain its road so near the line of trees.

It appears from the defendant's evidence that the intestate had been over the road about one hundred and sixty times as a conductor and about forty or fifty trips as a motorman, and, consequently, was familiar with the situation.

The claim of the defendant is that whatever peril existed by reason of the proximity of these trees, was, under the circumstances, an obvious risk which was assumed by the intestate.

It is well settled that the risks of the service a servant assumes in entering upon the employment of a master are only those which occur after the due performance by the employer of those duties which the law enjoins upon him. (*Benzing* v. *Steinway & Sons*, 101 N. Y. 552; *McGovern* v. *Central Vermont R. R. Co.*, 123 N. Y. 280.)

This rule, however, as to the risks of the service, or ordinary risks, in connection with the duty of the master to furnish a safe place in which a servant is to work, has no application to the situation here presented. It is often a close question to determine whether a single obstruction, located too near the track of a railroad, causing the death of an employee on a passing train, is or is not an obvious risk that he assumed.

In the case before us no such difficulty is presented; the intestate, when passing over this road frequently, was fully advised as to the proximity of the trees, and if, in his opinion,

there was peril in operating an open car, it was his duty to have retired from the employment; as he failed to do this, it must be held that he assumed whatever risk there was in the situation. (*Gibson* v. *Erie Railway Co.*, 63 N. Y. 449; *De Forest* v. *Jewett*, 88 N. Y. 264; *Sweeney* v. *Berlin & Jones Envelope Co.*, 101 N. Y. 520; *Appel* v. *Buffalo, N. Y. & P. Railway Co.*, 111 N. Y. 550; *Williams* v. *Del., L. & W. R. R. Co.*, 116 N. Y. 628; *Crown* v. *Orr*, 140 N. Y. 450; *Kennedy* v. *Manhattan Ry. Co.*, 145 N. Y. 288; *Maltbie* v. *Belden*, 167 N. Y. 307, 312.)

The rule of the assumption of obvious risks does not rest wholly upon the implied agreement of the employee, but on an independent act of waiver, evidenced by his continuing in the employment with a full knowledge of all the facts.

In *O'Maley* v. *South Boston Gas Light Co.* (158 Mass. 135) the Supreme Judicial Court of Massachusetts uses this language: " The doctrine of the assumption of the risks of his employment by an employee has usually been considered from the point of view of a contract, express or implied, but as applied to actions of tort for negligence against an employer, it leads up to the broader principle expressed by the maxim, *Volenti non fit injuria,* one who, knowing and appreciating a danger and voluntarily assumes the risk of it, has no just cause of complaint against another who is primarily responsible for the existence of the danger. As between the two, his voluntary assumption of the risk absolves the other from any particular duty to him in that respect, and leaves each to take such chances as exist in the situation without a right to claim anything from the other. In such a case there is no actionable negligence on the part of him who is primarily responsible for the danger."

The counsel for the defendant makes the additional point that negligence on the part of the company could not properly be predicated upon the location of its tracks on the side of the street, as it had no choice in the premises, but was compelled to obey the direction contained in the permit of the highway commissioner of the town of Owasco.

The defendant can claim no immunity by reason of the terms of this permit, and we rest our decision upon the error in the charge already pointed out.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to abide the event.

HAIGHT, MARTIN, CULLEN and WERNER, JJ. (and PARKER, Ch. J., in result), concur; O'BRIEN, J., absent.

Judgment reversed, etc.