(120 App. Div. 410)

### KELLOGG v. NEW YORK EDISON CO.

(Supreme Court, Appellate Division, First Department.   June 28, 1907.)

1. NEW TRIAL—VERDICT AGAINST EVIDENCE—INJURY TO SERVANT—ASSUMPTION OF RISK.

Though under the express terms of Employers' Liability Act, Laws 1902, p. 1750, c. 600, § 3, in an action for personal injuries to a servant, whether plaintiff assumed the risk of a burr chipping off a hand drill he held while it was struck by another was a question for the jury, if their verdict on that issue was against the weight of the evidence, it was the court's duty to set it aside.

2. MASTER AND SERVANT—RISKS OF EMPLOYMENT—ASSUMPTION BY SERVANT.

In an action for personal injury to a servant holding a hand drill while another struck it, by a burr chipping off the head of the drill, the jury should not have found that he did not know of the risk, if any, in holding the drill, or that he did not assume such risk, where he used it voluntarily, was familiar with drills at all stages of burring, and had worked with them long enough to acquire knowledge whether a long burr was more likely to chip off than a short one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.]

3. SAME—TOOLS—DEFECTS—EVIDENCE—WEIGHT.

Finding in an action for injury to a servant while holding a hand drill that the drill was defective *held* against the weight of evidence.

4. SAME—NEGLIGENCE.

It was not negligence making the master liable for an injury to a servant holding a hand drill, caused by a burr chipping off while the drill was being struck, for the superintendent to direct the servant and his companion to continue their work and hurry about it; he not having directed plaintiff to use that drill, and there being no proof that he knew· it was burred.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 291.]

Appeal from Trial Court, New York County.

Action by Irving R. Kellogg against the New York Edison Company. Defendant appeals from a judgment of the Supreme Court for plaintiff, and an order denying a motion for a new trial.   Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE,. HOUGHTON, and LAMBERT, JJ.

Frederick Hulse, for appellant.
Herbert C. Smyth, for respondent.

HOUGHTON, J.   The plaintiff had been in the employ of the defendant for about a year, and during that time had been engaged more

or less in holding a hand drill, which work he described himself as competent to do. While engaged in drilling a hole as directed by the foreman, a longer drill than the one he was holding became necessary, and, without any direction, he went to the tool box provided by the defendant, and the only drill long enough for the purpose which he found was one "mushroomed" or "burred" at the striking end. After using this drill for a few moments plaintiff and his striker stopped, and defendant's foreman, coming along, asked if they had finished drilling the hole, and, upon their replying that they had not, told them to get to work or he would report them. Thereupon plaintiff put himself in position, taking hold of the drill about two feet below the top. After watching the work a short time the foreman directed the striker to swing his hammer faster, and shortly thereafter a foul blow struck the edge of the drill, breaking off one of the burrs, which struck plaintiff in the eye, inflicting the injuries for which he has recovered. The action is under the employers' liability act (chapter 600, p. 1748, Laws 1902), and the complaint alleges that the defendant was negligent in failing to provide the plaintiff with a reasonably safe tool with which to prosecute his work, and in employing incompetent and inefficient workmen, and in causing and directing the work to be performed in an improper and dangerous manner, in that defendant's superintendent directed it to be done hastily and recklessly.

There was no proof that defendant's superintendent was not a competent one, or that defendant's striker was not competent to do such work; and the only question submitted to the jury by the court was as to whether or not the defendant provided the plaintiff with a reasonably safe drill to use in the prosecution of his work. It was conceded that the drill was made of proper material and purchased from reputable manufacturers. It was also conceded that the head of a drill must be of softer metal so that it will flatten out, thus forming burrs, otherwise it would chip off when struck. The plaintiff's position is that these burrs were allowed to grow too long on the drill in question, and should have been removed and the drill head re-dressed when they became one-eighth of an inch, instead of allowing them to remain until they were three-eighths of an inch, in length, as was the situation at the time of the accident, and that he did not assume the risk of using the drill in the condition in which he found it.

If it be conceded that the drill was defective because the burrs were too long, we think the conclusion of the jury that the plaintiff did not assume the risk of using it, which was necessarily involved in their verdict in his favor, was against the weight of evidence. While, under the provisions of section 3 of the employers' liability act, whether or not the plaintiff assumed the particular risk of one of these burrs chipping off from a blow of the hammer was a question for the jury to determine (Kiernan v. Eidlitz, 115 App. Div. 141, 100 N. Y. Supp. 731), still, if their verdict on that issue was against the weight of evidence, it was the duty of the court to set it aside. Vaughn v. Glens Falls Cement Company, 105 App. Div. 136, 93 N. Y. Supp. 979. Plaintiff voluntarily used the drill. No one compelled him to do so. He testified that he was familiar with drills at all stages of burring, and described particularly the length of the burrs he found on this

drill. He had been engaged in holding drills apparently long enough to acquire knowledge whether a long burr was more likely to chip off than a short one. Under such a state of facts the jury were not authorized in finding that the plaintiff did not know of the risk, if any there was, or that he did not assume such risk as might be incurred by the use of the drill.

We are also of the opinion that the verdict was against the weight of evidence as to the drill being a defective tool. Concededly the drill would have been defective had it been made of material so hard that it would not burr at all when struck. Plaintiff's expert testified that it was customary to rehead a drill when burrs had grown to an eighth of an inch in length, and that if allowed to grow longer than that the repeated pounding crystallized the metal and made them more likely to fly off, and that, although they often broke off when a square blow was struck, they were more likely to break when the drill was being used at an angle, as was the case at the time of the accident. On the other hand, the defendant's experts testified that there was no danger to a drill holder from a burred drill, and that the length of the burr made no difference, and that a burr would not fly off with force when a square blow was struck, but drop off instead, and that the only way a burr could be projected with force from the head of the drill was by a glancing or foul blow, and that in the practical use of a drill when the burrs became too long for convenience they were chipped off by the workmen themselves, which was easily done. The striker of the drill was standing slightly above plaintiff, and the top of the drill projected somewhat above plaintiff's head. The striker testified that when plaintiff was injured he struck a glancing blow; and the plaintiff, judging from the sound of the blow, testified that the hammer just struck the edge of the drill and passed slightly above his head and the steel entered his eye. The court charged the jury that the defendant was not responsible for the manner in which the blow was struck which caused the chip to fly.

From the facts appearing, it is quite evident that the unfortunate injury resulted, not from any defect in the drill because the burrs were too long, but rather because an improper blow was struck. It is quite difficult to see how a long burr would be more dangerous than a short one. Whether it was long or short, if it entered the eye it would cause injury; and with an improper blow there would be as much likelihood of the one chipping off as the other, and with a square blow the only effect upon the metal would be to increase the burring. The court charged the jury that if the piece which entered plaintiff's eye was a chip from the drill, and not a burr, the plaintiff could not recover, and the case was tried upon the theory that the burred condition was the only defect. The question involved is unlike those presented in Smith v. Lidgerwood Mfg. Co., 56 App. Div. 528, 67 N. Y. Supp. 533, and in Crilley v. New Amsterdam Gas Co., 106 App. Div. 127, 94 N. Y. Supp. 102, upon which respondent relies. In the Smith Case the question was whether the employer should protect his employé by screens from iron chippings flying habitually from the operations of other workmen, and in the Crilley Case the employer had furnished his workmen with chisels so brittle that they chipped off when struck.

In the present case the drill was properly made, and of proper material when originally furnished by defendant, and the only question involved was whether or not the defendant permitted it to be used after it became defective.

The question of whether the defendant established proper rules for the protection of his employés, if any were necessary, is not involved, for that question was not submitted to the jury. Nor was the plaintiff entitled to recover because of the negligence of the defendant's superintendent. It was not a negligent act for him to direct the plaintiff and his companion to continue their work and to hurry about it. He did not direct the plaintiff to use the drill which he was using, nor is there any proof that he knew that it was burred in the manner described by the plaintiff.

The judgment must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.